IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARVALEE LIN KEE, | CIV. NO. 21-00506 JAO-KJM |
| Plaintiff, | **ORDER AFFIRMING THE DECISION OF COMMISSIONER OF SOCIAL SECURITY** |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**ORDER AFFIRMING THE DECISION OF COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Marvalee Lin Kee ("Plaintiff") appeals Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's (the "Commissioner") denial of her application for social security disability benefits.  Plaintiff contends the Administrative Law Judge ("ALJ") erred when he (1) discredited Plaintiff's symptom testimony and (2) rejected as unpersuasive the assessment by Plaintiff's treating physician.  She asks the Court to reverse the Commissioner's finding that she is not disabled and remand the matter for a new administrative hearing.

For the following reasons, the Court AFFIRMS the Commissioner's decision.

## I.   ADMINISTRATIVE PROCEEDINGS

On February 8, 2018, Plaintiff applied for social security disability benefits. ECF No. 12 (Administrative Record ("AR")) at 15; *id.* at 138–41.  The Social Security Administration ("SSA") denied her application on July 26, 2018.  *Id.* at 15; 84–87.  Plaintiff subsequently sought reconsideration, and on February 6, 2019, SSA again denied her claim for benefits.  *Id.* at 90–93.

Plaintiff requested an in-person hearing before an ALJ. *Id.* at 94–95, 111. But due to extraordinary circumstances presented by the COVID-19 Pandemic, a telephonic hearing was held on January 13, 2021.  *Id.* at 15, 30.

At the telephonic hearing, Plaintiff testified among other things that she experiences pain "down from [her] elbows to [her] hands [and] lower back, hips and down both legs."  *Id.* at 44.  She added that she takes hydrocodone with acetaminophen "as needed" and "wear[s] a Fentanyl patch, 25 micrograms, [which] is changed out every 72 hours" for the pain.  *Id.*  Plaintiff further explained that she does not take the hydrocodone often because she "get[s] sleepy," but that the Fentanyl patches "help[] with the pain."  *Id.*  As to why she has delayed surgery, she testified that she wanted to try "natural" and "holistic kind[s] of remedies" first.  *Id.* at 47.

2

On May 11, 2021, the ALJ issued his decision, *id*. at 12–28 (the "Decision"),

finding and concluding as follows:

<u>Step One</u>

- Plaintiff did not engage in substantial gainful activity between June 15, 2016, and June 30, 2018 (the alleged onset date of disability through the date Plaintiff was last insured for benefits). *Id*. at 17–18. Her last long-term employment occurred in 2012 as a clerk for the State of Hawaiʻi. *Id.* She later was a part-time babysitter through 2015. *Id.*

<u>Step Two</u>

- Plaintiff has the following "medically determinable impairments" that significantly limit her ability to perform basic work activities: disorder of the spine, disorder of major joints of the right hand, fibromyalgia, osteoarthritis, and signs of early neurogenic claudication. *Id*. at 18.

<u>Step Three</u>

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). AR at 18.

<u>Residual Functional Capacity ("RFC") Analysis</u>

- Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following restrictions: lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours out of 8 hours, provided that Plaintiff is free to reposition herself every 30 minutes to relieve discomfort; occasional use of stairs and ramps; occasional stooping and crouching; permitted frequent gross handling and fine fingering bilaterally; never use ladders, ropes, or scaffolds; no kneeling or crawling; must avoid concentrated exposure to hazardous machinery and unprotected heights. *Id*. at 18–19.

Step Four

- Plaintiff is capable of performing her past relevant work as a claims clerk because it did not require performance of work-related activities precluded by Plaintiff's RFC.  *Id*. at 26.

Conclusion

- Plaintiff has not been under a disability at any time from June 15, 2016, through June 30, 2018.  *Id*. at 27.

The ALJ's Decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the Decision.  *Id.* at 2.

## II.    LEGAL STANDARDS

### A.    Standard Of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific

quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed.  *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that effort is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

## B.     Eligibility For Disability Benefits

To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability insurance benefits.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; *see* 20 C.F.R. § 404.1520.  It is the claimant's burden to prove a disability in steps one through four of the analysis.  *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if

a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

## III.   DISCUSSION

Plaintiff asserts the ALJ erred by rejecting both her testimony and reports by her treating physician.  Plaintiff ultimately disagrees with the ALJ's RFC determination and asks the Court to find her disabled.  The Court declines to do so because the ALJ did not err when it found Plaintiff's testimony and the reports by her treating physician not credible.

### A.    Credibility Assessment Of Plaintiff

Plaintiff argues the ALJ was required to give "specific, clear, and convincing reasons" to reject Plaintiff's symptom/pain testimony as there is objective medical evidence of an impairment and no evidence of malingering, but failed to do so. ECF No. 17 at 12 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).   In particular, Plaintiff contends the ALJ erred by providing insufficiently specific reasons to discredit her testimony when he (1) failed to discuss Plaintiff's testimony regarding her inability to maintain regular work attendance, *id*. at 13–14; (2) relied upon Plaintiff's minimal part-time, pre-disability onset work to discredit Plaintiff's testimony when the ALJ had already ruled that such work was not "substantial gainful activity" relevant to determining her RFC, *id*. at 14–15 (citing

AR at 53) (other citations omitted); (3) failed to explain why he did not consider Plaintiff's explanatory testimony, including her Adult Function Report, in determining that Plaintiff's testimony regarding her daily living was inconsistent with her pain and other symptoms, *id*. at 15–18; (4) mischaracterized (a) Plaintiff's use of pain medication as "as needed," and (b) her refusal to undergo surgery as indicative that she "refused pain management," *id.* at 18–22; (5) found that objective imaging of Plaintiff's spine did not support her claimed pain severity; and (6) "cherry-pick[ed]" from the objective findings of Plaintiff's physical examinations to discredit Plaintiff without explaining why those findings "are more important [than others] in assessing [her] credibility," *id.* at 23–25, and mischaracterized the objective evidence, *id.* at 25–27.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (internal quotations marks and citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  When the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*, 885 F.2d at 604.  The Ninth Circuit has established a

two-step analysis for determining the extent to which a claimant's symptom

testimony must be credited:

> "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

> "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases."

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote

omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), superseded by

regulation on other grounds (identifying two-step analysis in assessing the

credibility of a claimant's testimony regarding the subjective pain or intensity of

symptoms); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*,

504 F.3d at 1036.  That said, the ALJ need not "believe every allegation of

disabling pain, or else disability benefits would be available for the asking, a result

plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (quoting

*Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings to allow the court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony.  *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).  The following factors are relevant in reviewing an ALJ's credibility findings, and are also required by the SSA:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter*, 504 F.3d at 1040 (footnote and citations omitted); *see also Orn*, 495 F.3d at 636 (ALJs may consider the following factors in weighing a claimant's credibility:  "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (quoting *Fair*, 885 F.2d at 603) (other citation omitted)).

As discussed below, the ALJ's multiple bases for declining to fully credit Plaintiff's testimony about the severity of her symptoms constitute specific, clear, and convincing reasons.  *See Trevizo*, 871 F.3d at 678.

1.    Job Attendance

Plaintiff contends the ALJ erred by failing to discuss — and therefore also to make a credibility determination as to — Plaintiff's "testimony regarding the likelihood that she would be unable to maintain regular job attendance."  ECF No. 17 at 13.  Additionally, Plaintiff suggests her testimony that she suffers from "severe pain" multiple times a week is corroborated by her treating physician, Dr. David Seriguchi, who opined that Plaintiff would be unable to work at least three days a month due to her disability and pain.  *Id*. at 14 (citing AR at 1098). According to Plaintiff, because the vocational expert testified that an individual who misses up to three days per month of work could not maintain employment, then the ALJ's failure amounts to harmful error.  *Id.* at 14.

Plaintiff's argument is unavailing.  The ALJ did discuss Plaintiff's purported inability to maintain regular job attendance, explicitly considering the testimonies of both Plaintiff and Dr. Seriguchi, and ultimately articulating sufficiently specific reasons why he found them both unpersuasive.  *See Brown-Hunter*, 806 F.3d at 493 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony[.]" (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001))).  In particular, the ALJ concluded that despite Plaintiff's testimony that she could not "sustain or attend work due to musculoskeletal pain and joint discomfort as well as

11

fibromyalgia," AR at 25, "the objective studies revealed modest pathology, if any, including in the joints, and the medical records showed no widespread clinical deficits that substantiates her description of her overwhelming pain or other symptoms, much less fatigue or malaise." *Id*. In sum, the ALJ made sufficiently specific findings discrediting Plaintiff's pain testimony underlying her claimed inability to regularly attend work. *See Thomas*, 278 F.3d at 958 (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ also did consider Dr. Seriguchi's recommendation for work restrictions "including missing more than three days of work and need for additional as well as unscheduled breaks," which he based on his findings of "abnormal gait, sensory loss, reflex changes, muscle weakness, and positive straight leg raises." AR at 25. The ALJ then found that Dr. Seriguchi's work restrictions assessment was inconsistent with the physician's own observations as well as with other record evidence:

> [Dr. Seriguchi's] findings are not supported by his examinations of the claimant, during the period from the amended alleged onset date of June 15, 2016[,] through the date last insured on June 30, 2018. In examinations during this period, Dr. Seriguchi observed a limp, but negative straight leg raises, no sensory loss, and intact muscle strength in the lower extremities, except for abnormal L5. His exam reports during this period indicate no weakness in the upper extremities or other significant medical deficits in the spine or lower extremities, which could reasonably be expected to result in the extreme limitations he outlined in his assessment in October 2020. For these reasons, Dr. Seriguchi's assessment is not supported by his own findings nor consistent

with the other evidence of record, with regard to the period from the amended alleged onset date through the date last insured, and on this basis, is unpersuasive.

*Id.* (citation omitted).

Furthermore, the ALJ specifically found Dr. Seriguchi's assessment that Plaintiff's work "limitations have persisted since he began his treatment of [Plaintiff] in January 2014" was inconsistent "with other evidence showing [Plaintiff] worked in 2014 and 2015." *Id.* The ALJ also found that Dr. Seriguchi's assessment was not consistent "with the conservative treatment [Plaintiff] elected, nor with the orthopedic consult, which indicated by January 2018 [Plaintiff's] lower extremity pain was lower level, and no longer a primary issue." *Id.*

ALJs are not required "to perform a line-by-line exegesis of the claimant's testimony," nor are they required "to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." (citation omitted)). Here, the ALJ, short of going "line-by-line," articulated several specific bases for rejecting Plaintiff's testimony regarding irregular job attendance.

2.    Part-time Work

Plaintiff contends the ALJ erred in "not explain[ing] how the ability to perform [part-time] work translates into an ability to perform full-time work." ECF No. 17 at 15.  According to Plaintiff, "such minimal work" prior to the onset of her alleged disability "cannot be considered a clear and convincing reason based in substantial evidence that justifies discrediting her testimony." *Id*.

Plaintiff is partially correct.  Relying on Plaintiff's part-time work "*without more*, is not a clear and convincing reason to disregard her testimony." *Kovalenko v. Comm'r of Soc. Sec.*, No. 2:18-CV-1038-DMC, 2019 WL 3714567, at *11 (E.D. Cal. Aug. 7, 2019) (emphasis added).  In other words, "[t]o meet the clear and convincing standard, the ALJ would have to link Plaintiff's part-[time] work with her ability to sustain full-time work." *Id*.  Furthermore, an ALJ is entitled to consider work history as part of a credibility analysis. *See Miller v. Colvin*, No. 3:12-cv-00880-PK, 2014 WL 183824, at *9 (D. Or. Jan. 14, 2014); *Contreras v. Colvin*, No. 1:12-cv-2090-BAM, 2014 WL 5696443, at *9 (E.D. Cal. Nov. 4, 2014).

Here, Plaintiff's broad assertion that the "ALJ fails to specify what about her testimony was inconsistent with the minimal work she performed before the date she claims she became disabled" is unpersuasive.  ECF No. 17 at 15.  The ALJ used Plaintiff's part-time work prior to the onset of her disability to demonstrate

inconsistencies with her testimony and alleged pain. For example, Plaintiff previously reported that she could only lift five pounds while standing and ten pounds while seated. *Id.* at 23. Dr. Seriguchi later recommended Plaintiff not lift more than five pounds while seated. *Id.* Furthermore, Plaintiff alleges that work as a clerk was painful because it required "a lot of sitting" in the office and during the 25-minute commute time from home. AR at 19. However, as the ALJ reasonably pointed out, despite Plaintiff's allegations of pain, Plaintiff testified that she lifted and carried toddlers as a babysitter in 2015, and also carried 10 to 20 pounds of materials selling funeral plots. *Id.* Despite Plaintiff's assertion that she left her job because of back and leg pains, "her testimony indicates she went to work in various jobs thereafter." *Id.* at 20. In fact, Plaintiff's part-time work "involved more standing and walking, and even lifting and carrying 20 pounds, and she had to lift and carry toddlers when she later worked as a babysitter." *Id.* Additionally, Plaintiff even attempted to start a day care business. *Id.* That Plaintiff was ultimately unable to operate the business because she was not medically cleared does not lessen the fact that Plaintiff's testimony regarding what she could do on-the-job "[did] not reflect [her] deteriorating medical problems, as she described." *Id.*

To the extent Plaintiff asserts it was improper for the ALJ to factor her minimal work prior to the onset of her disability into his analysis, the Court

disagrees.  "It does not matter that Plaintiff only maintained a part-time work schedule because 'an ALJ may consider *any work activity*, including part-time work, in determining whether a claimant is disabled.'"  *James B. v. Kijakazi*, Case No. 3:20-cv-01676-IM, 2022 WL 3703208, at *4 (D. Or. Aug. 26, 2022) (quoting *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)) (emphasis added).  Here, the ALJ's decision to take into consideration Plaintiff's previous work and its inconsistencies with her alleged pain was not outside the considerations our case law provides.

      3.    <u>Daily Living</u>

Next, Plaintiff contends that the ALJ erred when he determined her daily living activities to be inconsistent with her alleged pain.  ECF No. 17 at 15. According to Plaintiff, because she has "good days and bad days," that she could "prepare a simple meal for herself without assistance, dress herself and bathe herself without assistance, and go to the store" "most of the time" (presumably, on "good days"), is not inconsistent with the severe pain she suffered on "bad days" that would cause her to have to lay down much of the day.  *Id.* at 16.  For this reason, Plaintiff contends the ALJ failed to:  (1) indicate which specific complaints are inconsistent; (2) explain why the activities are inconsistent with her alleged pain; and (3) address Plaintiff's explanatory testimony offered in the Adult Function Report and the hearing.  *Id.* at 16–18.

16

Again, Plaintiff's arguments are unpersuasive.  As a general matter, an ALJ's reasons for discrediting a claimant's testimony is sufficiently specific when the ALJ explains why "[t]he claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  The ALJ did so here.

First, as a threshold matter, Plaintiff testified that she lies down with a pillow between both knees about 3.5 hours "throughout the day" — whether a "good day" or a "bad day."  AR at 46 ("Q[:]  Okay. How much of your day would you say is spent lying down like that?  A[:]  Oh, gosh, at least three-and-a-half hours throughout the day.").  It is as to this limitation that the ALJ examined Plaintiff's testimony and identified specific activities that he found to be inconsistent:

> Despite her report of worsening symptoms and lying down much of the day, she acknowledged in her testimony that most of the time, she could prepare a simple meal for herself without assistance, dress herself and bathe herself without assistance, and go to the store from time to time.  Also inconsistent with her alleged pain and other symptoms, she testified to sweeping the garage and raking leaves in her garden daily, in addition to engaging in a primary household task, e.g., like laundry.  She acknowledged a prior description from February 2018 of her activities, as essentially accurate, in that she did laundry four times a week; vacuumed and mopped twice a week; raked leaves, swept the garage and watered the garden daily; and worked in the garden (watering but no weeding, picking peppers, and pulling dead leaves off the tree) once a week.

AR at 21.

17

Second, despite Plaintiff's claims that all she can do is lay down because of her severe pain, AR at 20, 48, the ALJ found that "[t]reating examinations further revealed negative straight leg raises and no atrophy of the muscles, as well as no signs of any joint deficits including in the hips." *Id*. at 22 (citations omitted). Indeed, these examinations suggest greater muscle use than Plaintiff alleges. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming ALJ's rejection of claimant's excess symptom testimony where the ALJ made specific findings, *inter alia*, a lack of disuse muscle atrophy); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming determination that claimant was not credible as to her alleged pain because she exhibited no muscular atrophy). Therefore, the ALJ acted within the bounds of his authority when he drew reasonable inferences based on Plaintiff's daily activities in relation to her purported pain. *See Maha I. v. Comm'r of Soc. Sec.*, CASE NO. C19-205-BAT, 2019 WL 5294422, *4 (W.D. Wash. Oct. 18, 2019) ("[T]he ALJ is entitled to draw reasonable inferences logically flowing from the record." (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008))). These relevant factors include, as was the case here, "inconsistencies in testimony or between testimony and conduct." *Orn*, 495 F.3d at 636.

The ALJ outlined sufficiently specific findings based on substantial evidence in the record to discredit Plaintiff's explanatory testimony. *See Molina*, 674 F.3d

at 1113 ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." (citations omitted)); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (affirming the ALJ's conclusion that Plaintiff's "daily activities are inconsistent with his allegations of disability"); *Frierson v. Berryhill*, CIVIL NO. 16-00397 KSC, 2017 WL 3951875, at *8 (D. Haw. Sept. 8, 2017) ("The ability to carry out these daily activities contradicted other testimony such as . . . having three to four bad days per week.").

Lastly, contrary to Plaintiff's assertion, the ALJ did acknowledge Plaintiff's explanatory testimony in the Adult Function Report.  The ALJ, for example, cited to the Adult Function Report in the Decision, which shows that Plaintiff's explanations were considered in light of the entire record and not in insolation.

> Given this record, the undersigned has added limitations of frequent gross handling and fine fingering bilaterally, which accommodates the claimant's reports of pain and numbness in her hands daily [5E] to the extent consistent with the findings of osteoarthritis and right upper [extremity] disorder, as well as a medically documented history of fibromyalgia . . . . *However, the record as a whole does not substantiate debilitating symptoms and loss of function, which the claimant attributed to the fibromyalgia and other conditions.*

*Id*. at 23 (emphasis added).

The ALJ, like the Court, must take into consideration the entirety of the record to determine whether substantial evidence exists to support declining Plaintiff social security benefits. *See Garrison*, 759 F.3d at 1009 ("We must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" (brackets, internal quotation marks, and citation omitted)); *Hamilton v. Callahan*, No. 96-35995, 1998 WL 43182, at *1 (9th Cir. 1998) (affirming "the ALJ's conclusion that [certain] impairments were not severe," despite the ALJ's failure to address those impairments, because there existed "substantial evidence in the record as a whole" to support the ALJ's conclusion).  Here, the ALJ properly weighed the Adult Function Report and Plaintiff's explanatory testimony against the entirety of the record and determined Plaintiff was not credible.

    4.   <u>Pain Medication And Surgery</u>

Plaintiff alleges the ALJ improperly relied on her lack of pain medication as a basis for finding her pain complaints incredible.  ECF No. 17 at 18.  Plaintiff also asserts the ALJ mischaracterized the record when concluding that Plaintiff "refused pain management," and "has either not pursued or delayed back surgery, despite receiving a recommendation for surgery in January 2016."  AR at 21.

An ALJ may consider the effectiveness of a medication when evaluating a claimant's testimony about symptom severity. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." (citation omitted)); *see also Parra*, 481 F.3d at 750–51 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citation omitted)); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (concluding substantial evidence supported a denial of benefits and noting that treatment addressed claimant's impairments).

Here, the ALJ properly considered Plaintiff's conservative treatment and lack of surgery when he found her testimony not credible. The ALJ acknowledged that Plaintiff takes hydrocodone with acetaminophen on an "as needed" basis, and a Fentanyl patch to help with the pain. *Id*. at 20, 44. According to Plaintiff, she testified that she chooses not to take much hydrocodone with acetaminophen because she "get[s] sleepy." *Id*. at 44. Plaintiff also admitted that she has either not pursued or delayed surgery, and instead has opted to use "natural," "holistic" methods by "frequenting the health food store a lot" and taking vitamins. *Id*. at 21, 47. As our case law indicates, the ALJ need only point to "specific evidence in the record," including evidence of conservative treatment, which "is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481

F.3d at 750.  Here, the ALJ offered several specific findings to discredit Plaintiff's testimony.

Plaintiff also asserts that the ALJ mischaracterized her pain management regimen by failing to acknowledge that she wears a fentanyl patch daily and "not on an 'as-needed' basis."  ECF No. 21 at 12.  Plaintiff makes clear in her testimony that she takes hydrocodone with acetaminophen, as needed, but that she wears a fentanyl patch that is changed out every 72 hours.  AR at 44.  According to Plaintiff, fentanyl "helps with the pain."  *Id*.  In the Decision, the ALJ did not distinguish between Plaintiff's two pain medications, but instead more generally indicated that "pain medication" is taken on an as needed basis.  *Id*. at 21 ("[H]er testimony is also that she takes pain medication, only on as needed basis, and that this helps[.]").

Having carefully reviewed the record, the Court finds that any ambiguity is harmless error.  *See Jones v. Comm'r of the Soc. Sec. Admin.*, 460 F. Supp. 3d 867, 871 (D. Ariz. 2020) ("The Court also considers the harmless error doctrine when reviewing an ALJ's decision.  This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is 'inconsequential to the ultimate nondisability determination.'" (citations omitted)); *Molina*, 674 F.3d at 1115 (stating that so long as substantial evidence exists supporting the ALJ's decision, and the error "does not negate the validity of the

ALJ's ultimate conclusion," the error is harmless).  Here, substantial evidence

exists to affirm the ALJ's decision, including, *inter alia*, Plaintiff's testimony that

the medication helps manage her pain, that "spinal surgery would be unwarranted,"

objective studies revealing "no widespread clinical deficits," and lack of atrophy

and other abnormalities consistent with someone lying down for hours during the

day.  AR at 25.

     5.    Objective Imaging

Plaintiff contends that the ALJ erred when he "made the conclusory

statement that the objective imaging of [Plaintiff's] spine do [sic] not support" the

degree of pain and symptoms she alleges.  ECF No. 17 at 22.  According to

Plaintiff, the "ALJ makes no attempt to explain what about this imaging makes

[Plaintiff's] pain complaints not credible."  *Id*.

Despite Plaintiff's characterization, the ALJ points to specific evidence to

discredit Plaintiff's testimony regarding her pain and symptoms.  The ALJ

highlights evidence demonstrating only minimal degenerative change in the

cervical and thoracic spine from imaging conducted in 2012 and 2013, which is

before the amended alleged onset date.  AR at 21.  Significantly, no subsequent

imaging through June 30, 2018, the date last insured, demonstrate findings

contrary to the "minimal degenerative" findings found in 2012 and 2013.  *Id*.

The ALJ did not rely solely on the objective imaging, but also incorporated three different physical examinations of Plaintiff "as of July 19, 2016, and later as of February 28, 2017 and January 16, 2018." *Id.* These examinations show that despite "decreased spinal range of motion, paraspinal spasm and variable [Deep Tendon Reflexes]" they "also reveal negative straight leg raises, intact sensation in the lower extremities and intact strength in the lower extremities except at L5." *Id.* As the ALJ noted, these examinations "remained essentially unchanged" through June 18, 2018, and are "not consistent with the alleged degree of symptoms in [Plaintiff's] legs and difficulties in bending, sitting, walking or standing, as she described." *Id.* The ALJ has offered cogent and specific findings to discredit Plaintiff's characterization of her pain.

6.  Objective Findings

Plaintiff argues that the ALJ's interpretation of her physical examinations is not supported by substantial evidence. ECF No. 17 at 23. According to Plaintiff, the ALJ "cherry-picks" which medical evidence is given more weight without explanation. *Id.* at 24. Plaintiff then contends the ALJ cannot reject her complaints for a lack of objective evidence. *Id.* at 25 (citing to *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's

subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain.")).

Plaintiff's recitation of the law is incomplete; the mere existence of objective medical evidence does not end the analysis. In fact, if an ALJ determines the claimant not to be credible, the next step requires the ALJ to "specifically make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa*, 367 F.3d at 885 (internal quotation marks, brackets, and citation omitted). Further, the Ninth Circuit clarified that "permissible grounds" would include "reputation for dishonesty, *conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony*." *Id*. (emphasis added).

Here, and as indicated above, the ALJ highlighted a variety of inconsistencies between Plaintiff's testimony and her conduct, and between medical examinations conducted by Dr. Seriguchi, Dr. Kenneth Kaan, and Dr. Morris Mitsunaga. For example, the ALJ properly determined that Plaintiff's activities that required standing, walking, using a mop or rake, and lifting were inconsistent with Plaintiff's claims of pain and discomfort. AR at 20–21. The ALJ further pointed to inconsistencies with the evidence demonstrating lack of hip joint deficit with Plaintiff's alleged degree of back and hip pain. *Id*. at 22. Indeed,

inconsistencies between a claimant's alleged limitations and the record evidence are a proper basis on which to discount those symptoms. *See* 20 C.F.R. § 404.1529(c)(2); *Burch*, 400 F.3d at 681; *Stubbs-Danielson*, 539 F.3d at 1175.

The ALJ also noted inconsistencies between medical examinations, including, for example, positive findings like decreased spinal range of motion and spasms, with negative findings like intact sensation in the lower extremities and negative straight leg raises. AR at 21. Despite Plaintiff's alleged pain and Dr. Seriguchi's assessment, Dr. Kaan opined that "'her lower extremity pain is only 4/10 and not a primary issue,'" and suggested treatment with a spinal cord stimulator instead of surgery. *Id*. (citation omitted). Additionally, the ALJ found that while Plaintiff claimed to be dependent on a cane and Dr. Seriguchi noted a limp, treating examinations did not mention "her use of a cane, and upon further questioning, [Plaintiff] admitted a cane is not medically prescribed." *Id.* at 22. Based on the above-mentioned inconsistencies, it was well within the ALJ's authority to weigh all the evidence before him in resolving conflicts and ambiguities. *See Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." (citation omitted)). Therefore, Plaintiff's argument that the ALJ's interpretation of her physical examinations is not supported by substantial evidence is unpersuasive.

**B.     Dr. Seriguchi's Testimony**

Plaintiff argues that the ALJ erred by determining Dr. Seriguchi's opinion unpersuasive.  ECF No. 17 at 28.  As both counsel agree, the two most critical factors an ALJ considers when evaluating the persuasiveness of a medical opinion is (1) how consistent the opinion is with the record, and (2) whether other objective medical sources support that medical assessment.  *See* 20 C.F.R. §§ 404.1520c(b)(2); (c)(1), (2).

Here, as already discussed, the ALJ sufficiently articulated specific findings that Dr. Seriguchi's medical opinions were inconsistent with Plaintiff's work history, day-to-day activities, and findings from other objective medical sources. *See supra* Sections III.A.1, A.2, A.6.  As a result, the ALJ's findings are supported by substantial evidence.  *See Trevizo*, 871 F.3d at 674.

//

//

//

//

//

//

//

//

27

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for social security disability benefits is AFFIRMED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 16, 2022.



_____
Jill A. Otake
United States District Judge

Civ. No. 21-00506 JAO, *Lin Kee v. Kijakazi*; Order Affirming the Decision of Commissioner of Social Security